UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

NATHANA MCDOWELL,              )
                              )
          Plaintiff,          )
                              )
     vs.                      )     Case No. 1:10CV10 CDP
                              )
MICHAEL J. ASTRUE,            )
Commissioner of Social Security, )
                              )
          Defendant.          )

## MEMORANDUM AND ORDER

This is an action for judicial review of the Commissioner's decision denying

Nathana McDowell's applications for benefits under the Social Security Act.  The

first application is for disability insurance benefits (DIB) under Title II of the Act,

42 U.S.C. §§ 401, et seq.  The second application is for supplemental security

income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§

1381, et seq.  Section 205(g) of the Act, 42 U.S.C. §§ 405(g), provides for judicial

review of a final decision of the Commissioner under Title II, and Section

1631(c)(3) of the Act, 42 U.S.C. § 1383(c)(3), provides for judicial review of a

final decision under Title XVI.  McDowell claims she is disabled due to pain in

her lower back, legs, and knees; depression; anxiety; high blood pressure; and

numbness in her hands.  McDowell alleges disability beginning January 2, 2006.

Because I find that the decision denying benefits was supported by substantial evidence, I will affirm the decision of the Commissioner.

## Procedural History

McDowell filed her applications for disability benefits on September 10, 2007. Her applications were denied initially on January 27, 2007, and upon reconsideration on November 28, 2007. On July 6, 2009, following a hearing, the ALJ issued a decision that McDowell was not disabled. The Appeals Council of the Social Security Administration (SSA) denied her request for review on November 4, 2009. Therefore, the decision of the ALJ stands as the final decision of the Commissioner.

## Evidence Before the Administrative Law Judge

### Application for Benefits

In her Application for Disability Benefits, McDowell stated that she had been unable to work since January 2, 2006. She is twice divorced and has two adult children. At the time she completed the form, she lived alone. She stated that she held jobs as an assembler, a cook in a nursing home, and housekeeper before becoming disabled.

In her Function Report, McDowell stated that on a typical day she got out of bed, took a shower, got dressed, fixed and ate breakfast, took her medicine,

straightened up the house, and then read, watched television, listened to music, or looked at photographs until she prayed and went to bed. On a "bad day," she would stay in bed, cry, and think about her past. She cares for her pets, and is able to dress, groom, and care for herself with some difficulties. She prepares her own meals on a daily basis, cleans her house, and shops for groceries. She stated that she has difficulty paying bills. She listed her hobbies as embroidery, reading, quilting, listening to music, and watching television. She attends church twice weekly. She indicated that her conditions affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, stair climb, see, remember, complete tasks, concentrate, understand, follow instructions, use her hands, and get along with others, which are all of the abilities listed on the form. McDowell claimed she feared shopping, driving, and being overwhelmed by obstacles. She does not maintain a checking account.

## Medical Records

McDowell was seen for medication management for high blood pressure at the Good Samaritan Care Clinic during 2006 and 2007. McDowell was diagnosed with morbid obesity. She was prescribed hydrochlorothiazide, Metoprolol, Lisinopril, and Atenelol for high blood pressure. McDowell was also treated for colds, acute bronchitis, and pain in her chest, hips, legs, and back at the clinic.

On November 14, 2007, Eileen Warner, RNCS, performed a consultative examination of McDowell in connection with her applications for benefits. Warner noted that McDowell's range of motion in her knees and hips was slightly reduced, and that she had reduced grip strength, fair strength in her arms and legs, and negative straight leg raising. Warner noted that McDowell was not in acute distress, and had normal joints and no atrophy. McDowell had some limited range of motion of her wrists bilaterally, but Warner concluded that the limitations on her range of motion generally were due to her "general obese size." McDowell could button her clothing and had handwriting within normal limits. McDowell had "some difficulty" following simple commands. Warner concluded that McDowell's limitations were related to subjective pain and obesity. Warner opined that McDowell could lift and carry 50 pounds occasionally and sit, stand, and walk for six hours during an eight hour workday.

On December 5, 2007, McDowell was seen at McVicker Family Healthcare with complaints of left knee pain. The assessment was chronic lower back pain, left knee pain, obesity, insomnia, and high blood pressure.

McDowell sought treatment for depression from Ina Bates, a licensed clinical social worker, at Behavioral Health Care on December 17, 2007. She was cooperative, with normal speech, behavior, and thought processes. McDowell had

a depressed mood and affect. McDowell told Bates that she had been with her current boyfriend for six years. McDowell's sons assist her financially and she also collects cans for income. Bates noted that McDowell was able to fully care for herself and manage funds. Bates assigned McDowell an Axis I diagnosis of major depressive disorder, recurrent, severe without psychotic features, bereavement, and posttraumatic stress disorder. Her Axis II diagnosis was "rule out borderline personality disorder." At Axis III, Bates noted obesity and blood pressure problems, and at Axis IV she wrote "problems with economic." Bates assigned McDowell a GAF[1] score of 51-53.

On January 10, 2008, McDowell was seen at Dale Family Medical Center "to establish care." She complained of knee and hip pain, back pain, chest pain, numbness in her hands, and trouble swallowing and sleeping. Upon examination, it was noted that McDowell's left knee was inflamed and had decreased range of motion due to pain. McDowell was sent for magnetic resonance imaging (MRI) scans at West Plains Imaging on January 15, 2008. A radiological report of McDowell's lumbar spine revealed "degenerative disc narrowing and facet joint

---

[1]A GAF is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. revision 2000)(DSM-IV-TR). A GAF of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning.

osteoarthritis L2-3 through the L5-S1 levels."   The MRI of McDowell's cervical spine showed "mild C5-6 and C6-7 anterior spondylosis and loss of normal lordosis, which may be due to spasm or positioning," and the thoracic spine had "minimal lower thoracic levoscoliosis and T3-4 through T10-11 degenerative disc changes and mild spondylosis."   The MRI of McDowell's left knee revealed joint effusion, osteoarthritic changes of the medial and lateral joint compartmemts, chondromalacia patella, and degenerative signal changes of the anterior horn lateral meniscus.

McDowell was evaluated by Richard Seagrave, M.D., an orthopedic specialist, on February 20, 2008 "at the request of Dr. David Dale and his nurse practitioner for evaluation of her left knee."   Upon examination, Dr. Seagrave noted that McDowell had full extension of her left knee and that it was stable.   He stated: "There is perhaps some pretibial edema.   Again she is really a large lady."   At the time of his examination, McDowell's weight was 305 pounds, with a height of sixty-four inches.   McDowell had full range of motion in her hips and negative straight-leg raising.   Her neuromuscular motor check was intact.   Dr. Seagrave reviewed McDowell's x-rays and found that they showed "perhaps some very mild degenerative changes," but with "reasonable joint space remaining, [and] no evidence of tumor or fracture."   Dr. Seagrave also reviewed McDowell's MRI

results and concluded they evidenced "some osteoarthritis of all compartments, including the patellofemoral compartment, perhaps some very minor fluid in the knee and perhaps some degenerative changes in the anterior horn of the lateral meniscus, which again, is a spot notorious for over-read." Dr. Seagrave "suspect[ed] [McDowell] has some degenerative changes in the knee, which are mild, but her main problem is that she is morbidly obese." He gave her a prescription for Mobic for pain and told her to lose weight.

McDowell returned to Dale Family Medicine on March 12, 2008. She was seen for a follow up on the osteoarthritis of the knee, high blood pressure, morbid obesity, and spondylosis of the spine. Her prescriptions were refilled, and she was "educated on knee exercises."

McDowell returned to Behavioral Health Care for therapy on March 24, 2008. Her mood and affect were depressed. She talked about learning coping skills for depression.

McDowell was seen again by Dale Family Medicine on April 2, 2008, where it was noted that she had edema of the left knee with decreased range of motion. On May 8, 2008, Dale Family medicine noted decreased musculoskeletal range of motion. McDowell returned on July 2, 2008 for medication management.

An MRI of McDowell's lumbar spine taken on May 14, 2008 showed "right

posterior disc protrusion at T10-T11 and diffuse degenerative disc bulge at L3-4 and L4-5."

On July 4, 2008, Dr. David Dale, M.D., McDowell's primary care physician, completed a Medical Source Statement-Physical on behalf of McDowell. He opined that McDowell retained the ability to: lift and/or carry eight pounds occasionally and six pounds frequently; stand and walk for twenty minutes continuously and two hours throughout an eight hour workday; and sit for forty minutes continuously and two hours throughout an eight hour workday. He also found that she was limited in her ability to push and/or pull for greater than fifteen to twenty minutes and could never climb, stoop, kneel, crouch, or crawl. He stated that she could occasionally balance, was limited in her ability to reach, and would need to lie down for two hours out of an eight hour workday and avoid environmental hazards. Dr. Dale noted that his opinion was based on MRIs, x-rays, and consultative reports.

McDowell was evaluated by Arifa Salam, M.D., a psychiatrist at Behavioral Health Care, on April 29, 2008 for depression. McDowell was alert and oriented with organized thoughts. Her mood and affect were "quite appropriate." McDowell reported to Dr. Salam that "now that she has applied for disability, [] she was suggested to restart treatment." She refused to take antidepressants and

opted to continue therapy for treatment of her depression. She continued her therapy sessions with Ina Bates from May through July, who noted that McDowell's mood ranged between mildly depressed to moderate to severely depressed. McDowell saw Dr. Salam again on July 8, 2008. She was alert and oriented, with good eye contact, coherent thoughts, and spontaneous speech. McDowell reported that she had not seen much improvement with her depression and agreed to start an antidepressant. Dr. Salam prescribed Wellbutrin and scheduled a six-week follow up.

McDowell returned to Dale Family Medicine on August 4, 2008. Upon examination, pedal edema, decreased musculoskeletal strength, and decreased range of motion were noted. Her extremities were normal. On September 24, 2008, Dr. Dale referred McDowell to a hand specialist for evaluation of stenosing tenosynovitis in her left ring finger. There are no records to indicate whether McDowell went for the evaluation and, if so, the results of the examination. On October 15, 2008, Dale Family Medicine again noted that McDowell was suffering from pedal edema and referred her for an echocardiogram. After reviewing the results of that test, on November 20, 2008, Dale Family Medicine noted that McDowell had "early to mild" congestive heart failure. About one month later, it was noted that McDowell had decreased musculoskeletal strength

and range of motion.  The same assessment was given on January 22, 2009.

Elizabeth Bhargava, M.D., a psychiatrist, completed a Medical Source Statement-Mental regarding McDowell in October of 2008.[2]  Dr. Bhargava opined that McDowell had a medically determined mental impairment.  She indicated that McDowell was not significantly limited in her ability to: remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; make simple work-related decisions; interact appropriately with the general public; ask simple questions or request assistance; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions; and, set realistic goals or make plans independently of others.  Dr. Bhargava found McDowell to be moderately limited in her ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special

_____

[2]It appears that Dr. Bhargava completed this assessment because Dr. Salam left Behavioral Health Care.

supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and work week without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in the work setting; and, travel in unfamiliar places or use public transportation.

An x-ray was taken of McDowell's left knee on February 6, 2009. Albert Shaw, M.D., concluded that the x-ray showed tricompartmental osteoarthritis. McDowell was evaluated at Dale Family Medicine on February 19, 2009, for follow-up treatment. She also complained of pain behind her right ear that extended into her jaw, and she rated that pain as a "10 out of 10." She also rated her knee pain as "9 out of 10." Dale Family Medicine again noted edema in her left knee with a decreased range of motion. McDowell's prescriptions were renewed.

<u>Testimony</u>

The ALJ held a hearing on McDowell's applications for benefits on May 15, 2009. McDowell appeared for the hearing and was represented by counsel. She testified as follows. At the time of the hearing, McDowell was 48 years old and

weighed 275 pounds at five feet four inches tall.  She completed high school.

McDowell told the ALJ that she could not work because of lower back pain, lack

of balance, left knee pain, numbness, and her inability to mentally cope with

things and comprehend.  She testified that she could sit and stand for about 20

minutes at a time, for a total of two hours daily per activity.  McDowell stated that

she fell once or twice a week and had memory problems.  She complained of

sleeping difficulties, which required her to nap two to three hours out of each day.

McDowell cleans the house and cooks, but she stated that it takes her almost all

day to complete these activities.  She shops for groceries, usually with help, and

does not do yard work.  McDowell testified that she attends church twice a week.

    Alan Cummings, a vocational expert, also testified at the hearing.  The ALJ

posed a hypothetical question about whether there would be sedentary work

(which the ALJ defined as the ability to stand or walk two out of eight hours; sit

six hours out of eight hours; occasionally climb, balance, stoop, kneel, crouch, and

crawl; with mild mental limitations for understanding and remembering tasks, for

sustaining concentration and persistence, for socially interacting with the general

public, and for adapting to workplace changes) available for someone with

McDowell's age, education, and work history.  The VE responded that there

would be jobs available as an assembler, an inspector, a sorter, and an order clerk.

McDowell's attorney then asked the VE to assume a hypothetical claimant with the physical limitations set out in Dr. Dale's Medical Source Statement. The VE responded that these limitations would preclude full-time, sedentary work. However, the VE testified that a hypothetical claimant would not be precluded from sedentary work based on the mental limitations identified by Dr. Bhargava in the Mental Source Statement - Mental.

## Legal Standard

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, id., or because the court would have decided the case differently. Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial, a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." Singh v. Apfel, 222 F.3d 448, 451

(8th Cir. 2000) (quoting Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir.

1999)).  Where the Commissioner's findings represent one of two inconsistent

conclusions that may reasonably be drawn from the evidence, however, those

findings are supported by substantial evidence.  Pearsall v. Massanari, 274 F.3d

1211, 1217 (8th Cir. 2001) (internal citation omitted).

To determine whether the decision is supported by substantial evidence, the

Court is required to review the administrative record as a whole and to consider:

(1) the credibility findings made by the Administrative Law Judge;

(2) the education, background, work history, and age of the claimant;

(3) the medical evidence from treating and consulting physicians;

(4) the plaintiff's subjective complaints relating to exertional and
non-exertional impairments;

(5) any corroboration by third parties of the plaintiff's impairments;
and

(6) the testimony of vocational experts, when required, which is based
upon a proper hypothetical question.

Brand v. Secretary of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th

Cir. 1980).

Disability is defined in social security regulations as the inability to engage

in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. § 42 U.S.C. 416(i)(1); § 42 U.S.C. 1382c(a)(3)(A); § 20 C.F.R. 404.1505(a); 20 C.F.R. 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five step procedure.

First, the Commissioner must decide if the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity, he is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or on medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled.

If the claimant cannot perform his past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy.  If not, the Commissioner declares the claimant disabled.  § 20 C.F.R. 404.1520; § 20 C.F.R. 416.920.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence.  Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984).  The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole.  See e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990).  In considering the subjective complaints, the ALJ is required to consider the factors set out by Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties
> and treating and examining physicians relating to such matters
> as: (1) the objective medical evidence; (2) the subjective
> evidence of the duration, frequency, and intensity of plaintiff's
> pain; (3) any precipitating or aggravating factors; (4) the
> claimant's daily activities; (5) the dosage, effectiveness and
> side effects of any medication; and (6) the claimant's functional
> restrictions.

Id. at 1322.  When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the

ALJ's finding.  Casey v. Astrue 503 F.3d 687, 696 (8th Cir. 2007).  However, the

ALJ retains the responsibility of developing a full and fair record in the non-

adversarial administrative proceeding.  Hildebrand v. Barnhart, 302 F.3d 836, 838

(8th Cir. 2002).

## The ALJ's Findings

The ALJ issued his decision that McDowell was not disabled on July 6,

2009.  In reaching his decision, the ALJ followed the five-step sequential

evaluation process, noting at step one that McDowell had not engaged in

substantial gainful activity within the proceeding fifteen years.  Proceeding to step

two, the ALJ found that McDowell had severe impairments of left knee

osteoarthritis, thoracic and lumbar spine degenerative disc disease, morbid

obesity, and depression.

At step three, the ALJ concluded that McDowell's condition did not meet or

exceed one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

1.  The ALJ noted that McDowell walks without an assistive device, is

neurologically intact, and had a negative straight leg raising test.  Although it

hindered her ability to perform postural activities more than occasionally, the ALJ

noted that McDowell's obesity did not exacerbate her impairments to Listings-

level severity.  With respect to her depression, the ALJ noted that McDowell

sought treatment, not because of any worsening mental impairment, but because she had applied for benefits and was suggested to restart treatment. The ALJ found no restrictions in the activities of daily living, only mild difficulties in social functioning, and moderate difficulties with persistence, concentration, and pace.

After consideration of the entire record, the ALJ concluded that McDowell had the residual functional capacity to perform sedentary work that would require only occasional climbing, balancing, stooping, kneeling, crouching and crawling, with mild limitations in understanding and remembering tasks, sustaining concentration and persistence, interacting with the general public, and adapting to workplace changes.

The ALJ then considered the testimony of the VE, as well as McDowell's age, education, work experience, and residual functional capacity when determining that there were available jobs that McDowell could perform, including jobs as an assembler, an inspector, a sorter, and an order clerk. Because the ALJ determined that McDowell was capable of work, she was found to be "not disabled."

## Discussion

McDowell first argues that the ALJ erred by not considering her complaints of numbness in her arms and hands as a severe impairment at step 2 of his

analysis.  The ALJ concluded that McDowell "has no impairment to account for this allegation," and pointed to the evidence in the record that she can button and write without difficulty.  At step two of the sequential evaluation process, an ALJ determines the medical severity of a claimant's impairments.  <u>See</u> 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  A severe impairment is one which significantly limits a claimant's physical or mental ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  Although McDowell has "the burden of showing a severe impairment that significantly limited her physical or mental ability to perform basic work activities, . . . the burden of a claimant at this stage of the analysis is not great."  <u>Caviness v. Massanari</u>, 250 F.3d 603, 605 (8th Cir. 2001).  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work."  <u>Page v. Astrue</u>, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks and citations omitted).

Here, McDowell argues that the January 15, 2008 MRI of her cervical spine establishes an impairment because it showed "Mild C5-6 and C6-7 anterior spondylosis and loss of normal lordosis, which may be due to spasm or positioning."  Yet there is no diagnosis, opinion, or test in the record suggesting that these mild changes were sufficient to cause arm and hand numbness.

McDowell also points to Dr. Dale's diagnosis of stenosing tenosynovitis in her left ring finger and referral to a hand specialist. Again, there is no evidence demonstrating that this diagnosis could cause McDowell's claimed impairment. In addition, there is nothing in the record to suggest that McDowell ever saw the hand specialist and, if so, the results of any tests or diagnoses. "While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem." Shannon v. Carter, 54 F.3d 484, 486 (8th Cir. 1995). Moreover, McDowell was able to perform normal daily activities, had fair strength in her arms and legs, could button quite well, and had normal handwriting. The consultative examiner Nurse Warner opined that McDowell could handle objects and lift and carry up to 50 pounds occasionally. Even if the ALJ had found a medically determinable impairment related to arm and hand numbness, substantial evidence demonstrates that McDowell's arm and hand numbness caused no more than minimal limitation of her ability to perform basic work activities. As such, the ALJ's determination that her arm and hand numbness was not a severe impairment must be affirmed.

Next, McDowell contends that the ALJ erred in his consideration of Dr. Dale's opinion. "It is the ALJ's function to resolve conflicts among the various treating and examining physicians." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir.

2002) (internal quotation marks and citation omitted). The opinions and findings of the plaintiff's treating physician are entitled to "controlling weight" if that opinion is " 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.' " Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2)). However, the opinion of the treating physician should be given great weight only if it is based on sufficient medical data. Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate need to evaluate record as whole and upholding the ALJ's decision to discount the treating physician's medical-source statement where limitations were never mentioned in numerous treatment records or supported by any explanation); Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data) (internal quotation marks and citation omitted); Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment). "Although a treating physician's opinion is entitled to great weight, it does not automatically

control or obviate the need to evaluate the record as a whole." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001).

An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch, 201 F.3d at 1013; Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that an ALJ may give a treating doctor's opinion limited weight if it is inconsistent with the record).

Additionally, Social Security Ruling 96-2p states in its "Explanation of Terms" that it "is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." 1996 WL 374188, *2 (S.S.A. July 2, 1996). SSR 96-2p clarifies that 20 C.F.R. §§ 404.1527 and 416.927 require the ALJ to provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)." Id. at *5.

When considering the weight to be given the opinion of a treating doctor, the entire record must be evaluated as a whole. Wilson v. Apfel, 172 F.3d 539, 542 (8th Cir. 1999) (quoting Cruze v. Chater, 85 F.3d 1320, 1324-25 (8th Cir.

1996) ("Although a treating physician's opinion is generally entitled to substantial weight, such opinion does not automatically control, since the record must be evaluated as a whole.")). "'It is the ALJ's function to resolve conflicts among the various treating and examining physicians.'" Tindell v. Barnhart, 444 F.3d 1002, 1006 (8th Cir. 2006) (quoting Vandenboom v. Barnhart, 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). An ALJ is entitled to give less weight to the opinion of a treating doctor where the doctor's opinion is based largely on the plaintiff's subjective complaints rather than on objective medical evidence. Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (citing Vandenboom, 421 F.3d at 749); see also Randolph v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004) (holding that a doctor's opinion stated in a checklist should not have been given controlling weight because the doctor had met with the plaintiff only three times at the time he completed the form).

Dr. Dale opined that McDowell was unable to perform less than the full range of sedentary work on a full-time basis. In evaluating Dr. Dale's opinion, the ALJ held:

> [Dr. Dale] maintained that the claimant had environmental limitations and needed to lie down for two hours of an eight hour workday. However, he refused to describe, when instructed to do so, the clinical and laboratory findings and symptoms upon which these limitations were based. He stated that he based his findings upon consult reports, but the one consult report

was from Dr. Seagrave who found that the claimant has only mild degenerative changes of her knee and is not significantly limited. Dr. Dale's opinion is contradicted by the objective medical evidence of record. Moreover, the claimant told Dr. Salam that Dr. Dale "is going to try to help me get disability." For these reasons, the Administrative Law Judge gives Dr. Dale's opinion no weight.

Here, the ALJ recognized Dr. Dale's opinion, but then properly assigned it no weight as it was inconsistent with the objective evidence of record and not supported by clinical and laboratory findings. First, Dr. Dale did not provide any data to support his opinion. At the time his opinion was rendered in July of 2008, Dr. Dale's treatment notes indicated that McDowell had normal musculoskeletal, neurological, and psychological findings. Her straight leg raising test was negative. Although he noted some muscle weakness and decreased range of motion in August and December of 2008, Dr. Dale did not include any test or grade to indicate the loss of strength and motion range. Her extremeties were normal. Moreover, Dr. Dale's course of treatment, which consisted primarily of medication management and "education on knee exercises," is inconsistent with the limitations he claimed. Dr. Dale never referred McDowell to an orthopedist or neurologist for consultation about her back pain. Although Dr. Dale claimed that he based his opinion on McDowell's MRI readings, xrays, and consultative reports, this evidence does not support the limitations found by Dr. Dale in his

Medical Source Statement. The only consultative report relied on by Dr. Dale was from Dr. Seagrave, an orthopedist, who found that McDowell has only "some very mild" degenerative changes of her knee and was not significantly limited. Dr. Dale's opinion was also inconsistent with other objective medical evidence of record. Like Dr. Seagrave, Nurse Warner found only slight reductions in grip, strength, and range of motion when performing McDowell's consultative examination. Both Dr. Seagrave and Nurse Warner opined that McDowell's limitations were related to her obesity. Nurse Warner concluded that McDowell could perform medium work.

The ALJ properly discounted the credibility of Dr. Dale's opinions because McDowell told her psychiatrist that he was "going to try to help me get disability." Given the lack of data supporting Dr. Dale's opinions, the discrepancies between his opinions and his recommended course of treatment, and his questionable credibility, it was proper for the ALJ to rely on other, more credible evidence in the record regarding McDowell's impairments. Credibility determinations, when adequately explained and supported, are for the ALJ to make. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). Because the ALJ gave his reasons for discrediting Dr. Dale's opinions, which were supported by the record, I will defer to his judgment. Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir 2001).

Finally, McDowell argues that the ALJ's decision should be reversed because his RFC determination is vague and unrelated to any medical evidence. RFC is defined as "what [the claimant] can still do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). The Eighth Circuit has noted the ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations. McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)).

Here, the ALJ concluded that McDowell had the RFC to perform sedentary work.[3] In making this determination, the ALJ considered McDowell's medically determinable physical and mental impairments and the extent to which the symptoms were consistent with the objective medical evidence, the medical evidence of record, and McDowell's testimony about her daily activities and

---

[3]The ALJ concluded that McDowell had the residual functional capacity to perform sedentary work that would require only occasional climbing, balancing, stooping, kneeling, crouching and crawling, with mild limitations in understanding and remembering tasks, sustaining concentration and persistence, interacting with the general public, and adapting to workplace changes.

subjective complaints.  McDowell argues that the ALJ erred by failing to consider the numbness of her hands and arms when formulating her RFC.  The ALJ discussed the medical evidence, including McDowell's subjective complaints of pain and ulnar neuropathy, and found them to be unsupported by the objective evidence.  He discussed the medical evidence indicating that McDowell had slightly limited ranges of motion due to obesity, fair strength, negative straight leg raising, no acute distress, no atrophy, and normal joints and musculoskeletal systems.  He reviewed the consultative examiner's findings that McDowell could perform the full range of medium work, yet gave McDowell the "significant benefit of the doubt" and limited her to less than the full range of sedentary work, which includes lifting no more than 10 pounds and occasionally lifting or carrying articles like docket files, ledgers and small tools.  See 20 C.F.R. §§ 404.1567(a), 416.967(a).  He analyzed the medical opinions of Dr. Seagrave, who concluded that McDowell's knee did "not look that degenerated" and that her "main problems is that she is morbidly obese."  The ALJ discussed and properly discounted Dr. Dale's opinions as discussed above, and reviewed McDowell's subjective allegations of pain.  The ALJ determined that McDowell's allegations were not fully credible because she took no analgesics for pain and collected cans for income, which requires greater than sedentary exertion.  He also reviewed her

daily activities, which he found to be inconsistent with her allegations, and the fact that she first visited Dr. Dale after she filed for benefits and that she told him she was "here to establish care." The ALJ's credibility determinations are well-supported by the inconsistencies in the record. See Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); see also Shannon v. Carter, 54 F.3d 484, 486 (8th Cir. 1995) (ALJ properly discounted claimant's subjective complaints of pain where "encounters with doctors appear to be linked primarily to his quest to obtain benefits, rather than to obtain medical treatment."). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007) (internal quotation marks and citation omitted). Here, the ALJ's RFC finding is consistent with the credible evidence of record. The ALJ properly considered McDowell's complaints of arm and hand numbness when formulating her RFC, which was much more limited than the consultative examiner's determination that she could perform a full range of medium work.

McDowell also argues that the ALJ's RFC is vague and not consistent with a finding of severe depression. At step two of the sequential evaluation process, the ALJ determined that McDowell had moderate limitations in concentration, persistence, and pace when using the "B criteria" to assess the severity of her

mental limitations.  When determining her RFC, the ALJ included some mild

limitations in understanding and remembering tasks, sustaining concentration and

persistence, socially interacting with the general public, and adapting to workplace

changes.  The ALJ adequately accounted for McDowell's mental limitations.  At

step five of the sequential evaluation process, the ALJ found that McDowell could

perform unskilled jobs only, which requires no more than understanding,

remembering, and carrying out simple instructions, making simple work-related

decisions, responding appropriately to supervision, and dealing with changes in a

routine work setting.  See, 20 C.F.R. §§ 404.1568(a), 416.968.  The VE testified

that someone with McDowell's age, educational and vocational background, and

physical and mental limitations could find work.  McDowell's attorney then asked

the VE to assume that the hypothetical claimant had the same nonexertional

impairments as those found in Dr. Bhargava's Medical Source Statement-Mental.

Dr. Bhargava opined that McDowell had moderate limitations in the ability to

carry out detailed instructions, maintain attention and concentration for extended

periods, perform activities within a schedule, sustain a routine, complete a normal

workday, accept instructions, and travel in unfamiliar places.  The VE testified

that these nonexertional limitations would not preclude a hypothetical claimant

with the same age, education, and vocational background as McDowell from

performing sedentary work. The hypothetical questions posed to the VE properly captured McDowell's limitations, including her nonexertional impairments, and the VE's testimony that the hypothetical person could perform work in the unskilled sedentary labor market constitutes substantial evidence upon which the ALJ's decision is based. See Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001). I find that substantial evidence as a whole supports the ALJ's decision to deny benefits because McDowell is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner denying benefits is affirmed.

A separate judgment in accord with this Memorandum and Order is entered this date.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 25th day of January, 2011.